Thank you, Your Honor. Your Honors, in this case, I think the biggest issue that we're dealing with is the failure of the district court to review at all the actual record of the state court proceedings. If you look at the district court's ruling in this case, it recites a lengthy statement of facts that's taken directly from the state court decision, but it does not reference in any way the actual record of the trial. And many of the issues in this case are directly related to what occurred at the trial. Under Ninth Circuit law, in ruling on a habeas petition, the state, the independent judgment as to whether or not the state court's factual determinations are reasonable, because that's part of determining the reasonableness of the ruling itself. And either the district court has to review the state court record and make that determination, or it has to hold an evidentiary hearing and make that determination. Can you tell us in which way, you know, the Court of Appeals made some pretty specific quotes from the record quite extensively. Is it something you think that you can point to that the district court didn't have before it, relating to the decision it made? Yes, a number of, I think, critical things from Mr. Sanchez's point of view. Let's, we'll start with whether or not the arraignment was a critical stage and whether or not he had effective assistance of counsel with respect to asking the court not to allow filming at the arraignment. The state court of appeals resolved that in large part by saying that Mr. Sanchez hadn't shown that the witness, Kublik, had actually seen any images that were taken from the arraignment. She may have seen other news coverage or something, but we don't know, because we don't have a record in front of us, what her actual testimony was and whether or not that's a reasonable interpretation of her testimony. And I think that's what the district court has to do in this situation, to force prejudice from the fact that he was filmed at his arraignment or photographed at his arraignment. So that's one example. Oh, can I ask you before you move on? I guess I'm not sure I understand your argument on that point. Wasn't it your client's burden to bring forward at least some evidence to suggest that the witness, in fact, saw an image taken at the preliminary hearing and that that's what allowed her to make the in-court identification? Wasn't it your client's burden to at least come forward with something to establish that? Well, he did establish through his own declaration what he had knowledge of, that she testified that she'd seen him on the news and that he had been photographed at his arraignment. I think that establishes enough that the look at the record to see what her testimony specifically was to determine whether or not when she said, I saw him on the news, she was talking about something that occurred at his arraignment. Is it not your burden, though, to put that into the district court record? Well, I'm not sure that someone in Mr. Sante's position is capable of doing that, at least not initially. Well, has there been any motion to supplement the record in any way? No, there hasn't been. So it seems to me that the district court's hands were somewhat tied by Mr. Sanchez and his counsel. That may be an issue of ineffective assistance of counsel, but the other areas where I think they're problematic, and these relate more to the other arguments, which are the issue of the failure to suppress the nine millimeter. When you look at what occurred according to the state court of appeals, the Mr. Sanchez's trial counsel did not make any attempt to actually suppress the nine millimeter firearm based upon an illegal search or seizure. He waited until the end of the aggravated murder trial, and then moved to suppress in connection with the firearm charge. The court of appeals said, well, that was a legitimate trial tactic, but that makes absolutely no sense whatsoever. No rational, reasonable attorney would forego a potentially successful suppression motion in an aggravated murder trial in order to save it for a firearms charge. That just is nonsense. So that's not a reasonable interpretation of the record by the court of appeals, even on its own recitation of the facts. The state court also stated that Mr. Sanchez had not shown prejudice, but I think even the facts that are in the record show significant prejudice. Mr. Sanchez's attorney tried very hard to keep the nine millimeter evidence out based on 403, on the fact that he claimed it was prejudicial to his client. And it clearly was prejudicial in a very real sense here. Mr. Sanchez's defense was, it wasn't me. It was this guy named Puppet, who apparently fled to Mexico. The witness, the other person who was involved in the shooting, who testified that it was Mr. Sanchez who did the shooting, was cooperating. So he was getting compensation for his testimony. There were a couple of other witnesses who testified that Mr. Sanchez always carried a nine millimeter. So the evidence that there was a nine millimeter in the car when Mr. Sanchez was arrested tended to bolster the credibility of those witnesses, which was very critical in this case. And here's why. There first were reasons to doubt their testimony. And in addition, Ms. Kublik, the victim who survived, she described someone that didn't even look like Mr. Sanchez when she was first asked to describe him. So, and then she didn't, thinking out of a lineup, she didn't identify him until she had seen him on the news. So this raises some real question whether or not any of this eyewitness testimony is accurate or reliable. One thing we don't know from the record, which I think is, could be something that would be really important to know, but I don't know why we don't know it. Did the description that Kublik give of the shooter actually match this guy puppet or in some way? Again, the record is silent, but it was this nine millimeter was, was a critical piece of evidence because it bolstered all these other witnesses testimony that Sanchez always carried a nine millimeter and their testimony was absolutely critical because Kublik's testimony was questionable for, for many reasons. So I think the court of appeals was totally unreasonable in saying that there was a legitimate trial tactic for failing to move to suppress. I think they also said that Mr. Sanchez's own counsel knew it was going to be very prejudicial and made great efforts to keep it out under 403. So in those respects, again, there are things that would be nice to know from the record, but even from what we know, I think the court of appeals, the state court was clearly unreasonable in resolving that issue. Would you agree that as to the first argument you raised concerning the holding of the trial in the jailhouse courtroom, that that is not an issue that turns on the district court having the state court trial transcripts before it? No, I would not because the position we took, which I think is a very reasonable position, is that jailhouse court rooms are very much akin to putting someone in shackles or in jail clothing. We don't know exactly what the jurors had to do to get into this courtroom. Is there a big sign that says you're going into the jail? Maybe, probably, I don't know. But if you know you're inside the jail as a juror and you're having a trial conducted inside the jail, I don't see how you conclude anything other than the court believes this guy is so dangerous they can't even let him out of jail for his trial, which is exactly the message that's conveyed when you put someone in handcuffs or in jail clothing. So I think it's extremely prejudicial. Now, how prejudicial or what you can do to maybe reduce that prejudice depends a lot upon the specific facts, which I don't think we have a lot of here. But I guess my question was more just the narrow point that you started with, which is that I think you're right, under our decision in NASB, the district court does have an obligation to make an independent review of the state court records, at resolving the legal issues. And I guess I don't really see why having the state court trial transcript in front of the district court would have made any difference in making the decision, right? Because we're doing a 2254 D1 analysis as to whether clearly established Supreme Court case law shows that basically you can't have that kind of trial absent certain findings and the like. And it doesn't seem to me you need the trial transcript to make that determination. No, I would agree with you on that. You don't need the actual trial transcript, but there are other parts of the record that would be helpful possibly. So I'm- Do you want to save, you have about three minutes left, do you want to save that for rebuttal? Yes, I will, thank you. Please support John Sampson, Assistant Attorney General, representing the respondent, Apple Lee. The district court correctly denied relief in this case for three reasons. First, the Supreme Court has never held that conducting a trial in a jailhouse courtroom violates the right to a fair trial. Therefore, the state court adjudication cannot be an unreasonable application of clearly established federal law. Second, the state court reasonably determined that the timing of the motion to suppress the nine millimeter handgun was not an effective assistance to counsel. And third, the state court reasonably determined that the first appearance and arraignment were not critical stages requiring the presence of counsel and the absence of counsel did not prejudice the defense. Can you start, counsel, can you start with the point that your opponent started with? Because I do read our decision in NASB as calling into question the way the district court proceeded here. So can you maybe address that point first? Yes, your honor. There has not been shown a error by the district court. And even if there was shown an error by the district court in not having a complete state court record, it's a harmless error that does not require reversal. And there's a couple reasons for that. First, I would point out that the respondent complied with rule five. We indicated that transcripts were available. Mr. Sanchez then, who was pro se, never requested the district court for direct us to provide any of the transcripts. He never filed a traverse to our answer. And when the district court ruled, he never filed a post judgment motion arguing that this issue was, that the district court should have requested the record. Did that occur in NASB? I am not aware of whether that occurred in NASB or not, your honor. But this was not an issue raised in the district court. It was raised for the first time on appeal. Second is, if you look at the actual claims, they do not require the trial transcripts. So Mr. Walls started with the third claim, which involved the arraignment and the first appearance. And those transcripts actually were, they were attached as an exhibit to the personal restraint petition, which was provided to the district court. And that's an excerpt to record 130 to 141. So the district court did have that part of the transcript. And the state court decision, if you review that transcript and you review the decision by the state court, Mr. Sanchez does not show that that state court decision was unreasonable. It's not enough that it might be erroneous findings of fact or even clearly erroneous findings of fact. It has to be that no reasonable fact finder could make the actual determination that the state court made. And he has not shown that. Is there some reference in the record somewhere, just this is a friendly question to you, I just can't remember. Is there some reference in the record to the witness stating that the picture she saw of the petitioner was taken at a convenience store counter or something like that? Your Honor, I don't recall whether that is true or not. What I do recall, the record shows that when she first couldn't identify him, she was in the hospital, she was under heavy medication, she was still recovering from her injuries. When she later produced, when she later said she identified him, she said that it was from news reports. And what the state court said was there was no indication that she said that that was from the arraignment. There's no record that she said I identified him for photos of the arraignment. And what the state court reasonably determined was there's been an allegation that there was a filming at the arraignment that caused that. But it was extensively covered by the media. It could have been a booking photo, it could have been a surveillance photo, it could have been a video of him later in the trial. Because the media filmed the case for extensive parts of the pretrial proceedings as well. So there's simply nothing in the record that shows that the presence of media actually affected the victim's identification. Moreover, the state court reasonably determined that her identification was extensively challenged at trial through cross-examination and through the presentation of a defense expert on this identification. And her testimony really wasn't the keys, it was the testimony of Mr. Mendez, who was the co-defendant who testified about the robbery and the murders. The testimony of Mr. Roscoe, who was involved in the planning of the robbery and who backed out at the last minute. And then importantly, the finding of the .45 caliber handgun, which forensics evidence linked to the murder, said this was the gun that killed the victims. And that was found in Mr. Sanchez's house. That's the evidence that was material to the outcome of the trial. So the state court reasonably determined that the alleged filming of the arraignment did not affect the outcome of the trial. And therefore, there was no reasonable probability that the outcome would be different if counsel was present and if counsel had made an objection. What about the issue related to the 9mm? Because that does seem like, at least in terms of how I would analyze that issue, it does seem like you'd need the actual trial transcript to make a final determination as to whether there was prejudice shown. Your Honor, I would disagree for one reason. The timing doesn't matter because the judge denied the motion prior to the bench trial when it was raised. The Court of Appeals later said that was error and the judge should have granted the motion to suppress. But the judge in the trial court denied it. So if the counsel had filed that motion prior to the jury trial and the judge denied it, it wouldn't have gone to the Court of Appeals until after he'd been convicted anyways. So the timing- That doesn't make any sense to me in terms of where we are now. Because you now have the Court of Appeals saying that motion should have been at least hypothetically on the whole construct of both the first and the second trial. And your argument as I read it is, well, perhaps it was strategic. And that seems to me to be quite a stretch to say that the counsel would have the motion in his back pocket and not put it out for the jury trial. And then when you get a lesser included trial, he pulls it out and makes it at that point. So it's hard to see how it would have been strategic and why it wouldn't have been an effective assistance of counsel. And that may lead you right back to prejudice, which is back to the record. So could you kind of follow that train? Yes, Your Honor. And so there were two points that the state court found. First, that there may have been a strategic reason for the delay and applying the presumption of competence required by Strickland. They found that Mr. Sanchez had not rebutted that because he didn't prove. There was nothing in the record developed as to why counsel made this decision. Because this was a claim raised on direct appeal. The court was limited to the trial record and this issue wasn't discussed in the trial. It was not raised on collateral review where you would bring in evidence showing why counsel did what counsel did. Secondly, as to prejudice, what the state court said was that it doesn't really matter that the judge denied the motion improperly. And it doesn't really matter regarding the timing, because there was other evidence regarding the nine millimeter. So we're talking about the firearm itself. What the Court of Appeals was saying, there were several witnesses who testified that Mr. Sanchez regularly had a nine millimeter. Mr. Mendez testified that he had the nine millimeter at the night of the murders. And other witnesses linked Mr. Sanchez to the nine millimeter. So the fact of the firearm itself, even if that had been excluded, the other evidence would have come in because that was not the fruit of the poisonous tree of the unlawful arrest. But counsel, my question to you is, doesn't the district court have to have the state court trial transcript in front of it to make its own independent determination as to whether the state court's decision was reasonable or not? How can you make that independent call if you don't have the underlying materials before you? Your Honor, they can do that because petitioner has not come forward with any facts showing that the state court decision was incorrect on this, let alone unreasonable. So it's again, even if it was an error by the district court, and we don't think it was, but even if it was an error, they still have to show that it's not harmless in order to get reversal by this court. I don't think that's what we said in NASB. I think we said in NASB that the court, totally aside from anything the petitioner does, the court itself has its own independent obligation to review, to obtain and review the relevant portions of the state court record. It's basically not capable of doing its job under the habeas statute unless it takes that step. And if that step doesn't appear to have occurred here. Well, Your Honor, the third point that I would argue then is that they still haven't shown prejudice because the state court's decision was that there was, again, this was not the murder weapon. This was a nine millimeter that just happened to be found with the petitioner when he was arrested. The other evidence, and I don't think Mr. Sanchez can seriously dispute that it was a .45 caliber handgun that was used to commit the murder, and that it was found in his house. I don't think he can dispute that Mr. Mendez actually testified against him, and that Mr. Orozco testified against him, and that other individuals testified against him. What he's saying is, well, there's this procedural error by the district court, so we need a remand for the district court to reach the same decision it would reach. And I would submit that that's not what SB requires. There is some burden, at least on the petitioner, to show that the district court's not obtaining the trial transcripts actually affected the outcome of the proceeding below. As to the courtroom claim, that is based on the lack of a Supreme Court case. So it really doesn't matter what the facts are. There is no Supreme Court case that held that conducting a trial in the courthouse inside a jail building renders the trial unfair. And since there is no Supreme Court case, that claim must be affirmed, the denial of that claim must be affirmed. The two closest cases are Holbrook versus Flynn and Cary versus Musladin. Holbrook involved the four troopers who were seated and armed in the courtroom, and the Supreme Court said that was not inherently prejudicial. And then in Musladin, the Supreme Court had extended Holbrook and applied it to courtroom spectators wearing buttons that had the image of the victim, and the Supreme Court said it's improper to extend Holbrook in that situation. What the petitioner is asking here is that this court extend Holbrook, and that's not allowed under Gleave versus Frost or under Lopez. The Supreme Court has repeatedly said that if you have to extend its holdings, the claim is not based on clearly established federal law and relief cannot be granted. And taking back to the photo and the arraignment situation, I know that counsel argued there was misidentification that was argued to the jury. What was the essence of that argument? What was that based on? Your Honor, it was based on her original inability to correctly identify Mr. Sanchez. She gave a description that didn't match him, and then when she was originally shown a photo of the lineup that had his photo in there, she didn't identify him. That was when she was at the hospital. Then when she was later able to identify him, she said it was due to news reports. And then their defense expert testified both in the motion to suppress her later at trial to the jury. Their expert testified about how misidentification can occur when people are trying to identify somebody during a violent crime. And the point is that the state makes is that her testimony really wasn't the compelling factors in this case. It was a factor, but it was more Mr. Mendez's testimony, Mr. Roscoe's testimony. The fact that the murder weapon itself, which forensics tied to the crimes, was found in Mr. Sanchez's home, those show that there's no reasonable probability. And again, there's no evidence that it was filming at the arraignment or first appearance is what Ms. Klubeck was talking about. There's no indication that that's the particular filming. There was extensive media coverage from the booking photo through the pretrial proceedings, and any of that could have been what caused her misidentification. Lastly, your honors, I would point, if this court believes that there was an error committed by the district court in not obtaining the record, which requires a remand, it should only be a limited remand on the one claim they potentially identified, and that would be the ineffective assistance of counsel regarding the timing of the motion to suppress. Because the first claim regarding the courtroom is not based on a holding of the Supreme Court. And the third claim, there is actually the trial transcripts from the arraignments, so those claims don't need further development. But we believe that all the claims are properly dismissed. Again, the timing didn't matter because the judge denied the motion either way. And so whether counsel raised it at the beginning of the trial or at the beginning of the bench trial, that didn't matter. The judge would have denied it, and the error would have been the judge denying it, not the timing of when the motion was made. So the response is that this court affirmed the dismissal of the habeas corpus petition, unless the court has further questions. It appears not. Thank you, Mr. Sampson. Thank you. Your Honor, I guess the only thing I would want to respond to at this point is this issue with the 9-millimeter weapon. The government makes the argument that that wasn't the critical factor, or that Ms. Kublik's identification wasn't a critical factor. It was the testimony of the other witnesses and the testimony about the 45-millimeter, or the 45 handgun. I tend to agree with that, but we don't know. It's very difficult, in hindsight, to judge what a jury might think is critical evidence in a case, or what is a piece of evidence that tends to sway them one way or the other. But I do think that there were issues with Ms. Kublik's testimony and her identification. Therefore, the jury probably had to rely somewhat on the other witnesses. And anything that would tend to bolster the credibility of those witnesses could have been a deciding factor in this case. Remember, even though Mr. Sanchez admitted the 45 was his, the testimony he presented and the evidence he presented was that it was in someone else's possession at the time of the shooting. So, again, it's not just the fact that he owned the 45, but whether or not it was with him at the time. And all the testimony was about the 9-millimeter was that he carried the 9-millimeter with him everywhere. And I think that could have been a very critical piece of evidence for the jury. Unless you have any other questions, I think that's all I have. Thank you. I'd like to thank both counsel for your argument this morning. The case of Sanchez v. Holbrook and the Washington Department of Corrections is submitted.
judges: McKeown, Watford, Rothstein